**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Eileen Hopkins, | : | Case No. 3:07-CV-2121 |
| Plaintiff, | : | |
| v. | : | |
| Commissioner of Social Security Administration, | : | **MEMORANDUM DECISION AND ORDER** |
| Defendant. | : | |

Plaintiff seeks judicial review, pursuant to 42 U. S. C. § 405(g), of Defendant's final determination denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U. S. C. §§ 416 (i) and 423 and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U. S. C. §§ 1381 *et seq*. Pending are the parties' briefs on the merits (Docket Nos. 16 and 19) and Plaintiff's Reply Brief (Docket No. 20). For the reasons that follow, this case is reversed and remanded to the Commissioner pursuant to sentence four of 42 U. S. C. § 405(g).

## **JURISDICTION**

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006).

## **PROCEDURAL BACKGROUND**

On January 7 and 12, 2002, Plaintiff filed applications for DIB and SSI alleging that her disabling condition began on December 18, 2001 (Tr. 57-60, 61-64).  The applications for DIB and SSI were denied initially and on reconsideration (Tr. 43-46, 37-40).  Plaintiff, represented by Attorney Loretta Wiley, and Joseph Thompson, a Vocational Expert (VE), appeared and testified before Administrative Law Judge (ALJ) Steven Neary on January 16, 2004 (Tr. 552). The ALJ rendered an unfavorable decision on February 25, 2005 (Tr. 19-26).  The Appeals Council denied Plaintiff's request for review on May 17, 2007 (Tr. 5-8).  Plaintiff filed a timely request for judicial review in this Court.

## **FACTUAL BACKGROUND**

At the time of hearing, Plaintiff was 52 years of age, approximately 5' tall and weighed 325 pounds (Tr. 554).  Plaintiff completed post secondary education and had a degree in law enforcement (Tr. 555).

Throughout the course of her career, Plaintiff was employed as a customer service representative for a credit card company.  She sat most of the time and used a computer.  Lifting was not required (Tr. 555-556).  Plaintiff was also employed as a nurse's aide and housekeeper.  She was required to stand, bend and lift (Tr. 556).  Plaintiff was last employed as a teacher in 2001 (Tr. 555).

Plaintiff had encountered a myriad of impairments, including fibromyalgia, diabetes, osteoarthritis, possible pinched nerve, obesity, sleep apnea, hypertension, numbness in her legs and right foot, angina, chest pains, dyspnea and cephalgia (Tr. 556, 561, 562).  The symptoms of fibromyalgia included persistent muscle pain, hand cramps, edema and paralysis.  Treatment included pain management and drug therapy.  Generally the pain precipitated the use of a sleeping pill (Tr. 559).  The side effects from the drug therapy included nausea (Tr. 557).  There was no evidence of a heart blockage

(Tr. 562). The headaches resulted from a twist in her neck. She had headaches daily (Tr. 563). Plaintiff applied a heating pad to painful areas (Tr. 559).

Plaintiff opined that she could drive, stand for five minutes before her back began to ache, sit up to fifteen minutes without moving and rise from sitting with assistance (Tr. 559, 560). She could not walk one block, lift an item heavier than a "pot," climb stairs without difficulty, hold items without dropping them or write for prolonged periods of time (Tr. 558, 559, 563).

Occasionally, Plaintiff attended church, however, during a typical day, she arose "very slowly," dressed and went to the pain clinic (Tr. 559, 560). There she engaged in various exercises designed to increase her pain tolerance. When she returned home, she tried to wash dishes "or something" followed by the consumption of a sleeping pill and a nap (Tr. 559).

The VE opined that an individual of Plaintiff's age, with her educational and employment background, limited to sedentary work and occupations that did not require climbing or frequent crouching, crawling and kneeling, was capable of performing work as a customer service representative as Plaintiff usually performed it. Based on her testimony, however, the VE claimed that Plaintiff would not be able to perform her past relevant work as a customer service representative. The mention of hand cramps, the need to move around and the need to sit and stand, would preclude this source of employment. The VE's testimony was consistent with the provisions of the Dictionary of Occupational Titles and the Selected Characteristics of Occupations (Tr. 565).

**MEDICAL EVIDENCE**

1. *Medical College of Ohio (Tr. 484-491).*

Plaintiff was evaluated in the rheumatology clinic to treat the symptoms of fibromyalgia. Plaintiff's medication, problem and allergy lists were consistently monitored (Tr. 486, 488, 490). At the

3

conclusion of this treatment program, Plaintiff showed a slight improvement in the severity of her knee pain (Tr. 484).

*2.     St. Anne Mercy Hospital (Tr. 282-283, 446-447).*

The x-ray of Plaintiff's lumbar region on February 7, 2003, showed no abnormality; however, some minimal marginal spurring was noted in Plaintiff's right knee (Tr. 282-283).

*3.     St. Charles Hospital (Tr. 157-163, 164-216, 318-332, 406-447, 470-477, 508-526).*

Plaintiff complained of chest pain/tightness on July 23, 2000.  The results of serial enzyme and stress tests were negative (Tr. 193, 195).  Cardiac imaging of Plaintiff's heart showed no evidence of acute intrathoracic process within the cavity of the chest (Tr. 204).  The stress test was non-diagnostic for an exercise induced restriction of blood supply (Tr. 210).  Plaintiff's chest x-ray taken on August 6, 2003, showed a slight cardiac enlargement (Tr. 280).

Dr. Richard L. Hussong confirmed the existence of a mass on Plaintiff's abdomen in December 2001 (Tr. 163).  During the preoperative testing, Plaintiff's chest X-rays showed normal results (Tr. 181).  Plaintiff underwent an exploratory laparoscopy to remove a cyst from her left ovary that was pushing on the bladder (Tr. 161, 163, 165).  No malignancy was identified in the removed sections of mass (Tr. 173).

On March 11, 2002, the computed tomography (CT) scans of Plaintiff's abdomen and pelvis were normal (Tr. 216).  During June and July 2002, Plaintiff engaged in aquatic therapy.  Her condition improved as a result of such therapy (Tr. 321-328).

The results of the brain scan administered on January 3, 2004, were normal (Tr. 406).  After having an episode of dizziness and near syncope in August 2004, Plaintiff was diagnosed with lightheadedness with profuse sweating and a decreased level of consciousness (Tr. 509).  The electrocardiogram showed evidence of a regular but unusually slow heart rate and an increased level of

cholesterol (Tr. 514, 518).

*4.    St. Lukes Medical Center (Tr. 110-122).*

Plaintiff was admitted to St. Luke's Hospital on December 19, 1997, complaining of left arm and chest pains and difficulty breathing (Tr. 111, 118). There was no evidence of acute pulmonary pathology (Tr. 118). Her chest X-ray was negative (Tr. 115). A pelvic mass was detected on the right side of Plaintiff's bladder (Tr. 122).

*5.    St. Vincent Mercy Medical Center (Tr. 130-156, 333-380, 395-397, 527-551).*

On November 6, 2001, Dr. Krishna M. Ragothaman discovered that the abdominal mass which had been a source of pain for Plaintiff was a kidney stone (Tr. 145-146). Medication was prescribed to dissolve the mass (Tr. 131). The mass, considered a benign fatty tumor, was still evident based upon the results of a CT scan administered on January 29, 2002 (Tr. 155).

On September 1, 2002, Plaintiff was diagnosed with bilateral pneumonia (Tr. 305). The results of a nuclear myocardial perfusion scan indicated possible multiple vessel disease (Tr. 303). The ultrasound was not indicative of significant valvular regurgitation, only thickening of the mitral leaflets (Tr. 359, 360). The results of the coronary X-ray administered on September 5, 2002, were indicative of a regular but unusually slow heart rate (Tr. 375). Plaintiff underwent a complete blood count on September 5, 2002. The results may have been adversely affected by disintegration of her hemoglobin. Nevertheless, Plaintiff's glucose levels were elevated and her cardiac test showed evidence of myocardial injury (Tr. 271, 272, 274). Plaintiff's chest and left wrist were considered "radiographically unremarkable" when examined on October 10 and November 26, 2002, respectively (Tr. 285, 286). The results of the cardiac catheterization administered on October 15, 2002, were normal (Tr. 335).

Plaintiff was diagnosed with degenerative disc disease at L2-L3 on February 7, 2003 (Tr. 397). Later, borderline stenosis at L2-L3 was noted as was a posterior protrusion of the L5-S1 disc (Tr. 401).

Plaintiff's "body habitus" limited the x-ray process; accordingly, no acute pathology to ascertain the etiology of Plaintiff's chest pain was possible on July 31, 2003 (Tr. 281). A CT scan image revealed, however, the appearance of pneumonia in the right lower lobe (Tr. 301). Slight anterior spurring at C4 was noted in August 1, 2003 (Tr. 298). Also, there was a mild elevation of the right heart pressures noted (Tr. 299, 300).

On July 7, 2004, Dr. Paul De Saint Victor diagnosed Plaintiff with an atypical chest pain (Tr. 542). The heart's sinus rhythm when measured on July 7, 2004, was normal (Tr. 549). The results from the cardiac catheterization conducted on August 6, 2004 were normal (Tr. 529).

*6.*     *Dr. Brian F. Hoeflinger (Tr. 308-314).*

Dr. Hoeflinger reviewed Plaintiff's records and conducted two clinical interviews. On July 17, 2001, Plaintiff's clinical presentations were consistent with cervical muscle pain (Tr. 314). On October 9, 2001, Dr. Hoeflinger noted that Plaintiff's rheumatoid screen and lupus anticoagulants were negative and her blood cell count was normal. In Dr. Hoeflinger's opinion, Plaintiff suffered from diffuse muscular and joint pain (Tr. 310).

*7.*     *Dr. Edna M. Jean, Podiatrist (Tr. 459-469).*

Dr. Jean diagnosed Plaintiff with a bony enlargement on the back of her heel on September 11, 2003 (Tr. 460). Medication was prescribed for treatment (Tr. 468).

*8.*     *Dr. Bashar Kahaleh, Rheumolotogist (Tr. 123-129).*

In December 2001, Dr. Kahaleh suspected that Plaintiff had arthritis (Tr. 127). He also noted that Plaintiff had diffuse tender points in the small extremities that were sensitive to individuals with fibromyalgia (Tr. 128, 317). On January 28, 2002, Dr. Kahaleh found that Plaintiff had two pressure points, bilaterally (Tr. 124). Dr. Kahaleh also diagnosed Plaintiff with "subdeltoid bursitis" (Tr. 125).

Dr. Kahaleh commenced a plan of care on January 8, 2003, which included, *inter alia*, increasing

Plaintiff's trunk range of motion and strength (Tr. 457). After two consecutive weeks of therapy, Plaintiff showed some control of her pain (Tr. 456). In March, she showed some improvement in her functioning (Tr. 455). In October Plaintiff showed overall improvement in the pain in her knees (Tr. 451). Thereafter, Plaintiff failed to attend the final sessions (Tr. 290-291, 450).

9.     *Dr. Sarah B. Long, State Agency Physician* (*Tr. 217-224).*

Dr. Long opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday and engage in unlimited pushing and/or pulling (Tr. 218). Plaintiff could never climb using a ladder, rope or scaffold; otherwise, Plaintiff could occasionally climb using a ramp or stairs, stoop, kneel, crouch and crawl (Tr. 219). Plaintiff had no manipulative, visual, communicative or environmental limitations (Tr. 219-220). A fellow state agency physician, Dr. Elizabeth Das, reviewed the evidence and concurred with Dr. Long's opinion (Tr. 224).

10.     *Dr. Samuel M. Park* (*Tr. 287, 494-506).*

In December 2003, Dr. Park prescribed a pain reliever during the first week that Plaintiff attended a comprehensive pain management program (Tr. 287). In January, Dr. Park prescribed a low dose of a narcotic drug used to treat pain (Tr. 499). Plaintiff completed the pain management program in February and was feeling "much better" and her affect was much improved (Tr. 498). On or about May 21, 2004, Dr. Park conducted a further evaluation (Tr. 492).

11.     *Dr. Shang V. Rhee (Tr. 478-480).*

Dr. Rhee found evidence of mild left median single nerve damage at the wrist such as seen in carpal tunnel syndrome. There was no evidence of cervical nerve pain or a brachial disorder (Tr. 480).

12.     *Dr. Mark Young (Tr.225-236, 237-266, 383-394)*

On August 12, 2002, Dr. Young prescribed medication to treat a headache that Plaintiff had for

five days (Tr. 248). Test results administered on August 23, 2002 showed elevated cholesterol, triglycerides and thyroid stimulus hormone levels (Tr. 277, 278). On September 9, 2002, Plaintiff's blood sugar had improved but her cholesterol levels were elevated (Tr. 249). On October 10, 2002, Dr. Young treated Plaintiff's complaints of bilateral knee pain and edema. He noted that Plaintiff had a history of fibromyalgia. The results of Plaintiff's chest X-ray were normal (Tr. 250, 391). When treated on November 18, 2002, no peripheral edema was noted (Tr. 251, 386); however, her cholesterol and triglyceride levels were elevated (Tr. 251, 263, 264). Plaintiff's left knee showed possible painful joint disease on December 6, 2002; however, her cholesterol levels had improved (Tr. 252).

In January 2003, Plaintiff was treated for bronchitis (Tr. 247). Plaintiff was urged to strictly follow her diabetic reducing diet (Tr. 246). In May, Plaintiff's blood sugar, cholesterol and white cell count were elevated (Tr. 245, 261, 262). Plaintiff failed to take the prescribed diuretic; consequently, in June, her feet and ankles were swollen (Tr. 244). No peripheral edema was noted on July 14, August 5, August 11, August 29 or November 4, 2003 (Tr. 238, 240, 241, 242, 243).

The results of a consultative examination identified symptomatic premature ventricular contractions (Tr. 296). Dr. Young treated Plaintiff for inflammation of the nose and pneumonia in August 2003 (Tr. 241, 242). On August 29, 2003, Dr. Young increased Plaintiff's dosage of insulin (Tr. 240). Dr. Young increased the dosage of insulin again in October because Plaintiff's evening blood sugars were elevated (Tr. 239). Lab tests administered on October 3, 2003, showed, *inter alia*, an elevated white blood count, alkaline phosphatase level in the liver and blood sugar level (Tr. 255, 257, 259). Plaintiff's cholesterol level was within the borderline high range (Tr. 259). In November, the inflammation of internal areas of the nose had returned (Tr. 238).

## **STANDARD OF DISABILITY**

The standard for disability under both the DIB and SSI programs is substantially similar. *See* 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920 (1999). To assist clarity, this Memorandum Decision and Order references only the DIB regulations, except where otherwise necessary.

To establish entitlement to disability benefits, a claimant must prove that she or he is incapable of performing substantial gainful activity due to a medically determinable physical or mental impairment that can be expected to result in death or to last for at least twelve months. *Murphy v. Secretary of Health and Human Services*, 801 F.2d 182, 183 (6th Cir. 1986) (*citing* 42 U. S. C. § 423(d)(1)(A)). The claimant must show that his/her impairment results from anatomical, physiological or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1513, 404.1528, 416.913, 416.928 (Thomson Reuters/West 2008).

To determine disability, the ALJ uses a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 (a) - (f) and 416.920 (a) - (f) (Thomson Reuters/West 2008). The ALJ considers: (1) whether claimant is working and whether that work constitutes substantial gainful activity, (2) whether claimant has a severe impairment, (3) whether claimant has an impairment which meets or equals the durational requirements listed in Appendix 1 of Subpart P, Regulations No. 4, (4) whether claimant can perform past relevant work, and (5) if claimant cannot perform his/her past relevant work, then his/her RFC, age, education and past work experience are considered to determine whether other jobs exist in significant numbers that accommodate him/her. 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920 (a)-(f) (Thomson Reuters/West 2008).

A finding of disability requires an affirmative finding at step three or a negative finding at step five. The claimant bears the burden of proof at steps one though four, after which the burden shifts to the Commissioner at step five. The ALJ's analysis at step five typically involves an evaluation of the claimant's RFC to perform a particular category of work (i.e., sedentary, light, medium, heavy or very

9

heavy work), in combination with an application of the grid to determine whether an individual of the claimant's age, education and work experience could engage in substantial gainful activity. *See* 20 C.F.R. Pt. 404, Subpart P, App. 2 (Thomson Reuters/West 2008).

## THE ALJ'S FINDINGS

After careful consideration of the entire record, the ALJ made the following findings:

1. Plaintiff met the non-disability requirements for a period of disability and DIB set forth is Section 216(i) of the Act and was insured for benefits through September 30, 2004.

2. Plaintiff had not engaged in substantial gainful activity at any time since the alleged onset of disability.

3. Plaintiff had severe impairments, namely, diabetes mellitus, fibromyalgia, angina, carpal tunnel syndrome and heel spurs. These medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C. F. R. Part 4, Subpart P, Appendix 1.

4. Plaintiff had the residual functional capacity to perform less than the full range of sedentary work. She could lift no more than ten pounds, could sit for about six hours in an eight-hour workday, and could stand or walk about two hours in an eight-hour workday. She could occasionally stoop, kneel, crouch, crawl and climb ramps and stairs. She could frequently balance but she could not climb using ladders, ropes or scaffolds.

5. Plaintiff's past relevant work as a customer service representative did not require the performance of work related activities precluded by her residual functional capacity. Plaintiff's medically determinable impairments–fibromyalgia, diabetes mellitus, angina, carpal tunnel syndrome and heel spurs–did not prevent Plaintiff from performing her past relevant work.

6. Plaintiff was not under a disability as defined under the Act at any time through February 25, 2005, the date of the decision.

(Tr. 25-26).

## STANDARD OF REVIEW

Pursuant to 42 U. S. C. § 405(g), this Court has jurisdiction to review the Commissioner's decisions. *Cutlip v. Secretary of Health and Human Services*, 25 F. 3d 284, 286 (6th Cir. 1994). Judicial

review of the Commissioner's decisions is limited to determining whether such decision is supported by substantial evidence and whether the Commissioner employed the proper legal standards. *Id*. (*citing Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)).  Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* (*citing Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied,* 103 S. Ct. 2428 (1983)).  The reviewing court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility.  *Id*. (*citing Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir.1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984)).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole.  *Id.* (*citing Kirk*, 667 F.2d at 536).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

## **DISCUSSION**

Plaintiff claims that despite a diagnosis of fibromyalgia, a severe impairment, the ALJ failed to properly articulate reasons for finding her subjective complaints of pain and limitations resulting from her fibromyalgia not credible.  Defendant suggests that Plaintiff is foreclosed from raising the issue of credibility in this litigation since she failed to raise the issue with the Appeals Council.  In the alternative, Defendant contends that the ALJ properly evaluated Plaintiff's complaints of pain, including pain from fibromyalgia and set forth reasons for his credibility determinations in the body of the decision.

1.	Issue Exhaustion

Defendant advises the Court that as a threshold matter, it should be noted that Plaintiff did not raise the credibility issue in her brief to the Appeals Council when she requested review of the ALJ's decision. Such statement is construed as a claim that to obtain judicial review of an issue, the claimant must specify that issue in his or her request for review by the Appeals Council. Considering the Supreme Court's pronouncement in *Sims v. Apfel*, 120 S. Ct. 2080 (2000), the Magistrate finds that issue exhaustion is not required in this case.

In *Sims*, the Supreme Court found that the regulatory nature of proceedings under the Act is unequivocal. *Id.* at 2084. The Act expressly provides that the administrative processes are conducted in a non-adversarial and informal manner. *Id.* (*citing* 20 C. F. R. § 404.900(b) (1999)). Such process permits, but does not mandate, that in seeking review by the Appeals Council, the claimant may file a brief. *Id.* The Commissioner's role in this process is as an advisor to the Appeals Council regarding which cases are good candidates for the Council to review pursuant to its authority to review a case *sua sponte. Id.* (S*ee* 20 C. F. R. § 404.969(b)-(c); *Perales, supra,* 91 S. Ct. at 1427). The Appeals Council might review the decision even if the claimant does not request review. *Id.* (*citing* App. 25-27). The regulations make it clear that the Appeals Council will "evaluate the entire record," including "new and material evidence," in determining whether to grant review. *Id.* (*citing* 20 C. F. R. § 404.970(b)). The Appeals Council is not obligated to rely on the claimant's claims in framing the issues. *Id.* Accordingly, a claimant who exhausts administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues. *Id.*

Plaintiff did not raise the credibility issue in her brief to the Appeals Council. She was not required to do so prior to seeking judicial review. It was appropriate for Plaintiff to raise the issue in this Court without preserving the issue during review by the Appeals Council.

2.   Credibility

Plaintiff contends that the ALJ's decision lacks a discussion of the reasons for finding that her complaints of pain and other symptoms were not credible particularly since she was diagnosed with fibromyalgia. Defendant responded that the ALJ properly evaluated Plaintiff's complaint's of pain and set forth reasons for his credibility determinations in the body of the decision.

It is within the ALJ's province, not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007) (*citing Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan,* 921 F.2d 642, 644 (6th Cir. 1990); *Kirk, supra*, 667 F.2d at 538). Such evaluation cannot be based solely upon an "intangible or intuitive notion about an individual's credibility" but such evaluation must find support in the record. *Id.* (*citing* SOC. SEC. RUL. 96-7p, 1996 WL 374186, at * 4). Whenever the claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* The "entire case record" includes any medical signs and laboratory findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.*

SOC. SEC. RUL. 96-7p also requires the ALJ explain his or her credibility determinations in his decision mandating that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248. Given the nature of fibromyalgia, where subjective pain complaints are critical in the diagnosis and treatment of the condition, justification for discounting a claimant's statements is particularly important. *Id.* (*citing Hurst v. Secretary of Health & Human Services*, 753 F. 2d 517, 519

(6th Cir. 1985)).

As in *Sims*, the ALJ's consideration of Plaintiff's subjective pain complaints and assessment of her credibility in this case does not comport with the Administration's requirements.  The ALJ provides a conclusion that Plaintiff's allegations are not totally credible for the reasons set forth in the decision. The ALJ fails to articulate  those reasons,  particularly since they are not isolated but considered a part of an all-inclusive discussion assessing the five-step sequential analysis.  He failed to specify if he rejected particular sources of evidence in assessing credibility.  Simply, the decision fails to contain specific reasons for the finding that Plaintiff's allegations were not credible.  Judicial review of whether the ALJ's decision is supported by substantial evidence has been thwarted by the ALJ's failure to make clear what evidence he reviewed in assessing credibility and what weight he gave to the evidence. Accordingly, the Magistrate is unable to find that the Commissioner's decision is supported by substantial evidence.

## CONCLUSION

The Commissioner failed to provide sufficient justification for discounting Plaintiff's credibility based upon applicable legal standards.  The Magistrate, therefore, **reverses** the decision of the Commissioner and **remands** the case to the Commissioner, pursuant to sentence four of 42 U. S. C. § 405(g), with directions to conduct further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:  August 28, 2008

14